23 A.3d 477 (2011)
421 N.J. Super. 281
Joan B. FUTTERMAN, Appellant,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR, and State of New Jersey, Respondents.
Docket No. A-3888-09T2
Superior Court of New Jersey, Appellate Division.
Submitted May 24, 2011.
Decided July 25, 2011.
*478 Joan B. Futterman, appellant pro se.
Paula T. Dow, Attorney General, attorney for respondent (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ellen A. Reichart, Deputy Attorney General, on the brief).
Before Judges CARCHMAN, GRAVES and WAUGH.
The opinion of the court was delivered by
GRAVES, J.A.D.
Joan B. Futterman appeals from a final decision of the Board of Review (the Board) that found her ineligible for unemployment insurance benefits under the Unemployment Compensation Law, N.J.S.A. 43:21-1 to -24.30. The principal issue on appeal is whether an employee who is obligated to take several self-directed furlough days may qualify for unemployment compensation by scheduling the days consecutively. For the reasons that follow, we affirm the Board's decision.
Futterman is employed by the New Jersey Department of Labor as an "appellate specialist" earning approximately $96,000 per year. She is also a member of the Communication Workers of America, AFL-CIO (CWA), an employee union.
On June 3, 2009, the CWA concluded a Memorandum of Agreement (MOA) with the State to address the impact of "an unforeseen and unprecedented" reduction in State revenues caused by "the current economic crisis." The parties acknowledged that the negotiated agreement would "facilitate the accomplishment of vital government policies and objectives, including the avoidance of layoffs, the delivery of needed public services, and the achievement of substantial budgetary savings." The State pledged not to lay off any bargaining unit employees before January 1, 2011, and in exchange, the CWA agreed to defer a scheduled "across-the-board" raise until the first full pay period in January 2011. Additionally, the MOA required each bargaining unit employee to take ten unpaid furlough days before July 1, 2010. Seven of these furlough days were to be "self-directed," or chosen by the employees themselves, in fiscal year 2010.
"In recognition" of these concessions by the CWA, the State agreed "to establish a Paid Leave Bank (PLB) for each unit member" and to credit each PLB with seven paid leave days. Employees were to receive one paid leave day on both July 1, 2009, and June 30, 2010, and the remaining five days were to be credited at a rate of *479 one paid leave day for every two self-directed furlough days utilized.
In a July 27, 2009 memorandum, the Governor's Office of Employee Relations provided guidance to all State departments and agencies regarding the self-directed furlough days. The memorandum noted that "the scheduling of such days cannot result in additional overtime, as the State will not receive the cost savings needed." It further stated:
Some employees may request to take multiple [self-directed furlough] days in a work week. That is their right to make such a request. Agency managers and supervisors cannot suggest or require that any employee take more than one furlough day in a week.
The expectation is that the majority of days taken will be for a single day in a week, even a pay period, because that spreads out the economic impact and generally should be better for operations. But, each situation is different. When a request for multiple days is made, the manager or supervisor needs to look at operational needs, other leave days that have been scheduled or requested and make sure such a request can be accommodated before it is approved.
[(Emphasis omitted).]
On August 21, 2009, the Division of Unemployment Insurance released a "policy regarding New Jersey State employee self-directed furloughs." After providing a background on the purpose of the Unemployment Compensation Law, the policy stated:
Under the MOA, there is no requirement that individuals take more than one day per week, and have until July 1, 2010 to utilize all unpaid furlough days. While the requirement that an employee schedules the seven self-directed days is mandatory, the accumulation of more than one such day in a given work week is a voluntary choice made by the individual employee. By voluntarily choosing to schedule multiple furlough days within one week, the individual is not doing what is reasonable and necessary to remain employed, and is turning down available gainful employment. Domenico v. Board of Review, 192 N.J.Super. 284, 469 A.2d 961 (App.Div. 1983). Thus the individual's decision has the effect of extending her period of unemployment, which may result in the collection of unemployment benefits. Accordingly, scheduling of multiple furlough days within one work week is not involuntary unemployment as contemplated by the statute, and the individual would not be eligible for unemployment benefits based on multiple furlough days being taken in a one week period.
Futterman requested authorization from her supervisor to use self-directed furlough days on the following dates: August 31, 2009; September 1, 2009; September 2, 2009; September 3, 2009; and September 4, 2009.[1] The request form required Futterman to make the following representations:
I understand that my request for an unpaid self-directed furlough day or days ("SDF") will be reviewed in accordance with the Memorandum of Agreement between the State and the union that represents me. . . .
I understand that I am not required to take more than one SDF day in any work week, or even in any two week pay period.

*480 I understand that if my request would result in more than one SDF day in the same work week, that it is my choice, and that I am asking my employer to accommodate my request.
I further confirm that my employer is not suggesting or requiring that I take more than one SDF day in any work week.
The form also included a hand-written note from Futterman: "But I am required to take 7 unpaid furlough days. I would not choose to be furloughed at all!" Her request was approved on August 12, 2009, and on August 30, 2009, she filed a claim with the Division of Unemployment Insurance.
A deputy claims examiner denied Futterman's claim on September 21, 2009, stating:
Under [the] MOA, there is no requirement that an individual take more than one self-directed furlough day per week. While it is mandatory that an employee must take self-directed furlough days, voluntarily choosing multiple self-directed furlough days in the same week is a personal decision on your part to extend[] unemployment. By voluntarily self-scheduling multiple furlough days within one week, you did not do all that is reasonable and necessary to remain employed. . . . You voluntarily chose to take more than one self-directed furlough day in a calendar week, therefore you are considered unemployed for only one day in that week. As a result, your projected earnings for the week ending 9/5/09 are $1474. Since this amount exceeds your Partial Weekly Benefit Rate (PWBR) of $700, you are ineligible for benefits.
After the deputy's decision was affirmed by the Appeal Tribunal, Futterman appealed to the Board, which determined that her receipt of paid leave days disqualified her from receiving benefits:
From the wording of [N.J.S.A. 43:21-19(p)], it is clear that remuneration need not be in the form of wages. It is equally plain that for each self-directed furlough day the claimant received something of value, the enjoyment of which, however, would be deferred until after June 2010. In our view, this was a day off for each two furlough days, unless the claimant chooses instead to receive a cash payment upon separation. Therefore, for the five furlough days taken during the week ending September 5, 2009, the claimant earned what might be termed two and a half extra vacation days. This persuades us that in the week in dispute, the claimant earned as remuneration the equivalent of pay for two and a half days.
. . . [T]he claimant listed her daily earnings as $368.52. Multiplying this by two and a half gives us a total of $921.30, well in excess of the claimant's partial rate of $700.00. Hence, the claimant was not unemployed during the week ending September 5, 2009 and is ineligible for benefits.
On appeal to this court, Futterman asserts that the denial of unemployment benefits "was inequitable, unreasonable, and contrary to the New Jersey Unemployment Compensation statutes." She further claims that the paid leave days do not qualify as remuneration.
"The standard of review we apply in appeals from administrative agency decisions, including those of the Board of Review, embodies limitations." Messick v. Bd. of Review, 420 N.J.Super. 321, 324, 21 A.3d 631 (App.Div.2011). "`[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the *481 original determination was its to make, but rather whether the factfinder would reasonably so conclude upon the proofs.'" Brady v. Bd. of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997) (quoting Charatan v. Bd. of Review, 200 N.J.Super. 74, 79, 490 A.2d 352 (App.Div.1985)). "Because we are required to defer to an agency's technical expertise, its superior knowledge of its subject matter area, and its fact-finding role," we are obliged to accept all factual findings that are supported by sufficient credible evidence. Messick, supra, 420 N.J.Super. at 325, 21 A.3d 631 (citations omitted).
Despite this level of deference, "[t]he judiciary may intervene `in those rare circumstances in which an agency action is clearly inconsistent with [the agency's] statutory mission or with other State policy.'" In re Authorization to Conduct a Referendum on Withdrawal of N. Haledon Sch. Dist. from the Passaic Cnty. Manchester Reg'l High Sch. Dist., 181 N.J. 161, 176, 854 A.2d 327 (2004) (second alteration in original) (quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994)). Thus, our scope of review is confined to four inquiries:
(1) whether the agency's decision offends the State or Federal Constitution;
(2) whether the agency's action violates express or implied legislative policies;
(3) whether the record contains substantial evidence to support the findings on which the agency based its action; and
(4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[Brady, supra, 152 N.J. at 211, 704 A.2d 547 (quoting George Harms Constr. Co., supra, 137 N.J. at 27, 644 A.2d 76).]
Drafted "in the depths of the Great Depression," Lourdes Med. Ctr. of Burlington Cnty. v. Bd. of Review, 197 N.J. 339, 361, 963 A.2d 289 (2009), the Unemployment Compensation Law includes a broad declaration of public policy, N.J.S.A. 43:21-2. Because "economic security due to unemployment is a serious menace to the health, morals, and welfare of the people of this state," the Legislature sought to cushion the blow of "[i]nvoluntary unemployment" on workers. Ibid. To do so, it "created a social safety neta means of financial assistancefor the unemployed worker and his family who suffered the `crushing force' of economic dislocation." Lourdes Med. Ctr., supra, 197 N.J. at 361, 963 A.2d 289 (quoting N.J.S.A. 43:21-2).
The underlying purpose of the Unemployment Compensation Law "`is to provide some income for the worker earning nothing because he is out of work through no fault or act of his own.'" Brady, supra, 152 N.J. at 212, 704 A.2d 547 (internal quotation marks omitted) (quoting Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 375, 554 A.2d 1337 (1989)). As our Supreme Court has stated, the Law "is designed to serve not simply the interest of the unemployed, but also the interest of the general public." Ibid. Therefore, the Court has "emphasized that `it is also important to preserve the [unemployment insurance trust] fund against claims by those not intended to share in its benefits. The basic policy of the [L]aw is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases.'" Ibid. (quoting Yardville, supra, 114 N.J. at 374, 554 A.2d 1337).
In this case, the record supports the Board's determination that Futterman did not qualify as unemployed while on furlough. It is clear to us that any individual who intentionally schedules five consecutive furlough days in order to advance a claim for unemployment benefits has not *482 done everything necessary and reasonable to remain employed. See In re Adoption of N.J.A.C. 12:17-9.6 by the N.J. Dep't of Labor, 395 N.J.Super. 394, 401, 928 A.2d 956 (App.Div.2007) (stating that because unemployment compensation is an insurance program rather than an entitlement, "employees are required to do whatever is necessary and reasonable in order to remain employed") (internal quotation marks omitted) (quoting Brady, supra, 152 N.J. at 222, 704 A.2d 547).
Additionally, Futterman fails to recognize that, as a union member, she is bound by the agreement negotiated by the CWA. See N.J.S.A. 34:13A-5.3 (granting "a majority representative of public employees in an appropriate unit" the authority "to act for and to negotiate agreements covering all employees in the unit"); see also Lullo v. Int'l Ass'n of Fire Fighters, Local 1066, 55 N.J. 409, 430, 262 A.2d 681 (1970) (upholding this provision and stating that the grant of negotiating exclusivity to a majority representative "enhances, implements and effectuates" public employees' collective bargaining rights). The MOA was expressly intended to promote several "vital government policies and objectives," one of which was "the achievement of substantial budgetary savings." Thus, Futterman's voluntary decision to condense her self-directed furlough days into a single work week is at odds not only with the legislative purpose of the Unemployment Compensation Law, Brady, supra, 152 N.J. at 212, 704 A.2d 547, but also with the MOA's stated intent.[2] Because the agreement was freely and voluntarily negotiated by her union, Futterman was bound by it, regardless of whether she personally approved of its terms.
We also reject Futterman's claim that the paid leave days did not qualify as remuneration. The Unemployment Compensation Law defines remuneration broadly as "all compensation for personal services, including commission and bonuses and the cash value of all compensation in any medium other than cash." N.J.S.A. 43:21-19(p). In light of this broad definition, we agree with the Board's conclusion that "in the week in dispute, [Futterman] earned as remuneration the equivalent of pay for two and a half days."
To qualify as "unemployed," an individual must "not [be] engaged in full-time work" and receive remuneration "less than his [or her] weekly benefit rate." N.J.S.A. 43:21-19(m)(1)(A). Futterman's weekly benefit rate was $700, and she reported a daily income of $368.52. Therefore, the value of the two-and-a-half paid leave days, $921.30, exceeded her weekly benefit rate, and the Board correctly determined that she was not "unemployed," as defined by the Unemployment Compensation Law. Ibid.
In view of the foregoing, Futterman has failed to establish that the Board's denial of her claim for unemployment benefits was contrary to the law; arbitrary, capricious, or unreasonable; or not supported by substantial evidence. Accordingly, the Board's final administrative determination is affirmed.
Affirmed.
NOTES
[1] These days corresponded with Monday through Friday for the week beginning on August 31, 2009.
[2] On this point, we note that if Futterman's claim were granted, any budgetary savings achieved by the mandatory furlough would be eviscerated by the State's obligation to fund her unemployment benefits. See N.J.S.A. 43:21-7.3.