**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1008-15T1

GISELA R. PRIETO,

    Appellant,

v.

BOARD OF REVIEW and
SHILOH COMMUNITY
DEVELOPMENT CORPORATION,

    Respondents.

_____

Submitted March 16, 2017 — Decided May 3, 2017

Before Judges Hoffman and O'Connor.

On appeal from the Board of Review, Department
of Labor, Docket No. 00047284.

Gisela R. Prieto, appellant pro se.

Christopher S. Porrino, Attorney General,
attorney for respondent Board of Review
(Melissa H. Raksa, Assistant Attorney General,
of counsel; Adam Verone, Deputy Attorney
General, on the brief).

Clifford G. Stewart, attorney for respondent
Shiloh CDC.

PER CURIAM

Gisela Prieto appeals from the final agency decision of the Board of Review. The Board of Review affirmed the Appeal Tribunal's determination disqualifying Prieto from unemployment compensation benefits under N.J.S.A. 43:21-5(a), for leaving work without good cause attributable to the work. Defendant claims good cause existed due to allegedly discriminatory and retaliatory actions by the employer. We affirm.

Prieto began working as a part-time data manager for Shiloh Community Development Corporation (Shiloh) in February 2014. In October of that year, data Prieto entered into the computer began to go missing. Prieto testified her supervisor, Linda Johnson, screamed at her during a meeting that month, and she declined to allow Prieto to attend certain training. At various times, Johnson allegedly made comments to Prieto along the lines of "what do you think you're a soul sister you don't know stuff like that." Prieto describes herself as white and Hispanic.

On November 19, 2014, Prieto submitted an Employee Complaint/Concern Form, in which she detailed allegations against Johnson. Shortly thereafter, on November 23, Johnson sent Prieto an email with an attached Employee Warning Notice, and asked her to keep daily logs of her work, as she had failed to timely input significant amounts of data. Following the investigation of

2

Prieto's complaint, Shiloh changed Prieto's supervisor to Avril Noyan.

On December 4, Prieto spoke with Marie Thelusma-Chase, Shiloh's CEO, and others. Prieto expressed her belief that Noyan had incorrectly charged patients and had improperly coded medical records. The group asked Prieto to take some time off while they investigated. Before she left, Prieto locked her door and turned in her keys because she "didn't want to be falsely accused" of "[t]aking or doing something with my work."

On December 11, Prieto had a meeting with Johnson and Noyan. At the meeting, Noyan stated, "[S]he didn't know what kind of Christian that [Prieto] was." On December 16, Prieto claimed Noyan entered her office, and in a "hostile" tone, demanded to know the status of a data discrepancy. Prieto accused Noyan of changing records. Noyan has authority to change the records.

Around that same time, Prieto claimed she began to see "strange people" when leaving the building, who would ask, "[H]i how you doing?" Prieto never asked management about the "strange people," but also claimed, "We had . . . mysterious things happen of someone entering the office and that's it just I couldn't handle it. I couldn't handle having to worry that I could be falsely accused of . . . fabricating data and going to jail." Prieto said these factors made her employment "unbearable."

3

On January 4, 2015, Prieto submitted her resignation and filed for unemployment benefits with the Division of Unemployment Insurance. A Deputy to the Director of the Division determined Prieto was disqualified from benefits, finding she had voluntarily left work without good cause.

Prieto appealed to the Appeal Tribunal, which affirmed the decision. Specifically, the Tribunal determined Prieto had not demonstrated her working conditions were "abnormal," nor had she demonstrated that her supervisor's actions were sufficient cause to leave her position. The Tribunal cited Prieto's admissions that she left work due to the "strange people," and because she did not want to be blamed for falsifying documents. The Board of Review later affirmed the Appeal Tribunal's decision. This appeal followed.

We exercise limited review of administrative agency decisions. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). We simply determine whether the administrative decision is arbitrary, capricious, or unreasonable. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). The burden rests with the person challenging the action. In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div.), certif. denied, 188 N.J. 219 (2006).

In matters involving unemployment benefits, we accord deference to the expertise of the Board of Review. See Brady,

supra, 152 N.J. at 210; Doering v. Bd. of Review, 203 N.J. Super. 241, 245 (App. Div. 1985). We must accept the Board's findings where supported by sufficient credible evidence. Brady, supra, 152 N.J. at 210.

Unemployment compensation exists "to provide some income for the worker earning nothing because he is out of work through no fault or act of his own." Futterman v. Bd. of Review, 421 N.J. Super. 281, 288 (App. Div. 2011) (emphasis omitted) (quoting Brady, supra, 152 N.J. at 212). A person becomes disqualified for benefits when he or she voluntarily leaves work "without good cause attributable to such work." N.J.S.A. 43:21-5(a).

An employee who leaves work voluntarily has the burden of proving he or she "did so with good cause attributable to work." Brady, supra, 152 N.J. at 218; see N.J.A.C. 12:17-9.1(c). We have construed "good cause" to mean "cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." Condo v. Bd. of Review, 158 N.J. Super. 172, 174 (App. Div. 1978) (quoting Associated Util. Servs., Inc. v. Bd. of Review, 131 N.J. Super. 584, 586 (App. Div. 1974); Goebelbecker v. State, 53 N.J. Super. 53, 57 (App. Div. 1958)). The good cause must directly relate to the individual's employment and give the individual no choice but to resign. N.J.A.C. 12:17-9.1(b). The test relies on "ordinary common sense

and prudence." <u>Zielenski v. Bd. of Review</u>, 85 <u>N.J. Super.</u> 46, 52 (App. Div. 1964). The employee must base the resignation upon "real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." <u>Domenico v. Bd. of Review</u>, 192 <u>N.J. Super.</u> 284, 288 (App. Div. 1983).

Prieto claimed good cause, alleging her employer retaliated against her by requiring her to keep a performance log and by issuing performance reprimands. However, these actions came because Prieto received a warning for substandard performance. Mere over-sensitivity to criticism does not constitute good cause. <u>Associated Util. Servs.</u>, <u>supra</u>, 131 <u>N.J. Super.</u> at 589. On-the-job reprimands from a supervisor, even when public and arguably improper and humiliating, do not justify a claimant's resignation. <u>Gerber v. Bd. of Review</u>, 313 <u>N.J. Super.</u> 37, 40 (App. Div. 1998).

Prieto also claimed good cause in that the "soul sister" comment and another statement about her Christianity created a discriminatory and hostile work environment. One-time comments will form the basis for a hostile work environment claim only in a "rare and extreme case." <u>Lehmann v. Toys 'R' Us, Inc.</u>, 132 <u>N.J.</u> 587, 606-07 (1993). Where multiple incidents exist, we must examine their cumulative impact. <u>Id.</u> at 607.

Here, Prieto failed to demonstrate how these comments constituted discrimination, let alone how they justified her in

leaving the job. She merely recited the statements without context. As such, we find no basis to disturb the administrative finding that Prieto's work conditions were not "abnormal."

Alternatively, Prieto suggested her sightings of "strange people" justified her leaving her job. While Prieto claimed the "strange people" caused her concern, she never spoke with management about her concerns nor did she attempt to determine the identity of these people. She provided no evidence these people deserved her suspicions; she had limited interactions with them and they simply asked her, "[H]ow you doing." Imaginary or trifling circumstances do not justify an employee's resignation. Domenico, supra, 192 N.J. Super. at 288. This alternative claim clearly lacks merit.

Accordingly, we find nothing arbitrary, capricious, or unreasonable about the Board's determination that Prieto left work voluntarily and without good cause. Further, the Board's decision finds support in substantial credible evidence in the record. We find no basis to disturb the Board's finding.

To the extent we have not addressed any of Prieto's remaining arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1008-15T1