**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1883-18T3

JASONTOWN II ASSOCIATES
LP,

     Appellant,

v.

NEW JERSEY HOUSING AND
MORTGAGE FINANCE AGENCY,

     Respondent.

_____

Argued January 8, 2020 – Decided January 30, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the New Jersey Housing and Mortgage Finance Agency.

Michael D. DeLoreto argued the cause for appellant (Gibbons PC, attorneys; Michael D. DeLoreto and Jennifer Phillips Smith, on the briefs).

George Edward Loeser, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jeet M. Gulati, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Jasontown II Associates, LP (Jasontown), appeals from the November 21, 2018 Final Decision of the New Jersey Housing and Mortgage Finance Agency (Agency). This decision rejected the findings of an Administrative Law Judge (ALJ) and adopted a 2 percent rent increase for Jasontown instead of Jasontown's proposed 158 percent rent increase. We affirm, substantially for the reasons set forth in the Agency's comprehensive and well-reasoned written decision, which is "supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D). We add the following comments to give context to the Agency's decision.

Jasontown operated under the Agency's authority for nearly five decades. In 1970, Jasontown's predecessor, the Monday Corporation, and the Agency's predecessor, the New Jersey Housing Finance Agency, entered into a Mortgage and Regulatory Agreement (First Agreement) for the construction of an apartment complex (the project). The project was developed with the specific intent of generating housing for "moderate income" families. The Agency financed the project with a first mortgage loan of over seven million dollars at a below-market interest rate. Jasontown received no other governmental subsidy or benefit and agreed to comply with the Agency's rules and regulations,

including the Agency's determination of appropriate rents and rent increases, in exchange for the below-market interest rate loan. The First Agreement provided for a cumulative annual return on Jasontown's investment, also known as a return on equity (ROE), of eight percent of the equity base per year.

In October 2009, Jasontown requested the Agency's approval for an increase to Jasontown's equity base and a resulting ROE amount of $861,147.87. The Agency approved this request, subject to Jasontown funding an additional $1,575,350 operating reserve. An operating reserve's primary purpose is to ensure a project has adequate funding in case operating revenues are lower than expected or operating expenses are higher than anticipated. Jasontown did not comply with this Agency condition; therefore, the ROE amount remained unchanged from 2009 through 2013.

In 2014, Jasontown again asked for an increase to its equity base and sought an annual ROE amount of $1,064,000. It also requested permission from the Agency to prepay the outstanding mortgage loan and obtain a new $12 million-dollar mortgage loan. The Agency approved both requests, subject to Jasontown signing a new regulatory agreement (Second Agreement), consenting to be bound by the Agency's rules and regulations until October 2019, and subject to Jasontown funding an additional $1,748,250 operating reserve.

3

Jasontown satisfied these conditions and the 2014 ROE increase took effect. After prepaying the initial mortgage, Jasontown cashed out $11,620,436.52 from the project and distributed these proceeds to Jasontown's owners.

In 2016, Jasontown requested the Agency's approval to release $1,064,000 from its operating account as ROE for its owners. The Agency approved this release. Shortly after cashing out this significant ROE, Jasontown submitted its 2016 application for a 158 percent rent increase, along with its proposed budget for calendar year 2017. In November 2016, the Agency approved a two percent rent increase.

Jasontown objected to the two percent rent increase and filed a Notice of Petition and Appeal to challenge the Agency's decision. The matter was transferred to the Office of Administrative Law (OAL) for a hearing as a contested case. In May 2018, the ALJ issued an Initial Decision wherein she recommended a nineteen percent rental increase. Both parties filed exceptions to this decision, and the Agency remanded the Initial Decision to the ALJ due to "incomplete and confusing language" in the Initial Decision and the need to correct "apparent typographical errors." The ALJ reconsidered her decision and in August 2018, issued an Initial Decision on Remand, concluding Jasontown was entitled to a rent increase of 25.4 percent. Both parties filed exceptions,

and the Agency issued its Final Decision on November 21, 2018 rejecting the ALJ's conclusions. The Agency again approved a two percent rent increase for Jasontown, effective January 1, 2017.

On appeal, Jasontown argues "years of arbitrary and capricious actions by the Agency to suppress the rent and eligible income limits" bars today's families of moderate income from living at the project. It also claims the Agency failed to properly account for maintenance and ROE when granting a two percent rent increase on Jasontown's 2016 application. Further, Jasontown contends "[t]he magnitude of the rent increase requested by Jasontown [in its 2016 application] is directly attributable to the decades of the Agency's refusal to approve adequate rent increases."

The Agency counters that it rejected the ALJ's Initial Decision on Remand, in part, because it determined the ALJ incorrectly found Jasontown "entitled" to the maximum permitted ROE in 2017. The Agency explains that N.J.A.C. 5:80-3.1 to -3.5 prescribes the annual ROE calculation, and does not require the maximum amount calculated to be paid out annually. Instead, the statute expressly acknowledges the Agency may defer annual ROE payments to a future time, including when the project is sold.

A-1883-18T3

Our review of final decisions by state administrative agencies is limited in scope. See Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988). An appellate court will not alter the ultimate determination of an agency unless the decision was arbitrary, capricious, or unreasonable, or it violated legislative policies expressed or implied in the act governing the agency. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963). There is a "strong presumption of reasonableness attach[ed] to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Adoption of Amendments to Ne., Upper Raritan, Sussex Cty., 435 N.J. Super. 571, 582 (App. Div. 2014) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

We must also "'defer to an agency's technical expertise, its superior knowledge of its subject matter area, and its fact-finding role,'" and therefore are "obliged to accept all factual findings that are supported by sufficient credible evidence." Futterman v. Bd. of Review, Dept. of Labor, 421 N.J. Super. 281, 287 (App. Div. 2011) (quoting Messick v. Bd. of Review, 420 N.J. Super.

321, 325 (App. Div. 2011)). However, this court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

Mindful of our limited standard of review and the Agency's regulatory expertise, we are satisfied the Agency's Final Decision is supported by substantial evidence in the record and consistent with the applicable law. We, therefore, affirm the determination, substantially for the reasons cogently expressed in the Agency's Final Decision dated November 21, 2018.

To the extent not otherwise addressed, Jasontown's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1883-18T3