**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0637-19

JOSEPH YAKUP,

     Petitioner-Appellant,

v.

DEPARTMENT OF THE
TREASURY, DIVISION OF
PENSIONS AND BENEFITS,[1]

     Respondent-Respondent.

_____

Submitted March 16, 2021 – Decided March 30, 2021

Before Judges Haas, Mawla and Natali.

On appeal from the State Health Benefits Commission.

Lauren Sandy, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Alison Keating, Deputy Attorney General, on the brief).

---

[1] The State Health Benefits Commission was incorrectly pled in appellant's amended notice of appeal as the Department of the Treasury, Division of Pensions and Benefits.

PER CURIAM

Appellant Joseph Yakup appeals from the September 3, 2019 final decision of the State Health Benefits Commission (Commission), which denied his request for free retiree health care benefits. Yakup contends that he was entitled to these benefits under N.J.S.A. 52:14-17.28d(b)(3) because he had "[twenty] or more years of creditable service in one or more State or locally-administered retirement systems on" June 28, 2011, the effective date of L. 2011, c. 78 (Chapter 78). In the alternative, Yakup argues that the Commission was equitably estopped from denying him free health care benefits based upon representations allegedly made to him by two State employees concerning his eligibility for these benefits. Having considered Yakup's contentions in light of the record and the applicable law, we affirm the Commission's decision.

I.

By way of background, prior to Chapter 78's enactment on June 28, 2011, contributions for health care coverage for active and retired State employees was subject to collective negotiations. Upon its effective date, Chapter 78 required

A-0637-19

State employees[2] in active service to pay a portion of the cost of this coverage pursuant to a schedule set forth in N.J.S.A. 52:14-17.28c.[3]

Retired State employees are also eligible for subsidized health coverage if they have "accrue[d] [twenty-five] years of nonconcurrent service credit in one or more State . . . retirement systems on or after [June 28, 2011, and] . . . retire[d] on or after that . . . date . . . ." N.J.S.A. 52:14-17.28d(b)(2)(a). Like the active State employees, these retirees are required to contribute a percentage of the cost of their benefits pursuant to the schedule set forth in N.J.S.A. 52:14-17.28c. See N.J.S.A. 52:14-17.28d(b)(1). However, N.J.S.A. 52:14-17.28d(b)(3) provides an exception to the contribution requirement for those employees "who have [twenty] or more years of creditable service in one or more State or locally-administered retirement systems on" June 28, 2011. These employees are entitled to receive health care coverage after retirement at no cost to them. Ibid.

---

[2] Although Chapter 78's application was not limited to State employees, we focus our discussion here to that subset because Yakup was employed by the Division of State Police at the time of his retirement in 2014.

[3] The State pays the remaining cost of the health care benefits.

A-0637-19

We now recite the salient facts of the present case as found by the Administrative Law Judge (ALJ), who conducted a hearing concerning Yakup's claims.

Between June 1989 and March 1990, Yakup worked for ten months at the Somerset County Prosecutor's Office. During this period, he was enrolled in the Public Employees' Retirement System (PERS).

After Yakup left this position, he worked as a police officer with the Borough of Raritan (Borough) for thirty months between April 1990 to September 1992. During this period, Yakup was a member of the Police and Firemen's Retirement System (PFRS). When he commenced this employment, Yakup did not transfer his ten months of pension service credit from the PERS to the PFRS and, therefore, this PERS credit expired in March 1992. N.J.S.A. 43:15A-7(e).[4]

In January 1993, Yakup left the Borough's employ and joined the State Police, where he was enrolled in the State Police Retirement System (SPRS).

---

[4] N.J.S.A. 43:15A-7(e) states that the "[m]embership of any person in the [PERS] shall cease if he shall discontinue his service for more than two consecutive years."

Yakup did not transfer his thirty months of PFRS service to the SPRS and, therefore, this service expired in September 1994. N.J.S.A. 43:16A-3(3).[5]

As noted above, Chapter 78 became effective on June 28, 2011. On that date, Yakup had only the eighteen years and five months of service credit he had accrued in the SPRS from January 1993 to June 2011. Thus, Yakup did not qualify for free health care benefits upon his future retirement because he did not "have [twenty] or more years of creditable service in one or more State or locally-administered retirement systems on the effective date of" Chapter 78 as required by N.J.S.A. 52:14-17.28d(b)(3).

In February 2014, Yakup began to plan for his retirement. Although he claimed that he "met with various Pensions and Benefits Specialists on several occasions" at the Division of Pensions and Benefits (Division), he only specifically identified one such employee, Danielle Walsh, who corresponded with Yakup about his possible purchase of his long-expired PERS and PFRS service credit. In a February 20, 2014 email, Walsh told Yakup:

> From what I was told, you can use the purchase to get
> to your [twenty-five] years for [h]ealth [b]enefits, but
> not for the [s]pecial retirement (65%)[.] My supervisor
> and I were unaware of this. You will get a percentage

---

[5] N.J.S.A. 43:16A-3(3) states that "if more than [two] years have elapsed from the date of [the member's] last contributions to the system, he shall thereupon cease to be a member."

A-0637-19

per year up to the 50% for the special so you would get 3.33 extra percent above the 50% (that is how the chief of purchases explained it to us). . . . If you do still want to leave though, you will have the [health benefits] and the service pension from what I was told.

The ALJ found that Walsh gave Yakup accurate information. She told Yakup that if he purchased back his forty months of pension service, he would have slightly over the twenty-five years of service credit he needed to qualify for subsidized health care coverage after he retired. Walsh also correctly informed Yakup that he would qualify for a service retirement, rather than a special retirement, and properly advised him that he would receive 53.33% of his final compensation[6] as a pension. Walsh never told Yakup that his health care coverage in retirement would be free. In March 2014, Yakup purchased his forty months of prior service credit for $16,864.66.

On October 1, 2014, Yakup sent an email to Debra Prettyman, who worked in Employee Services for the State Police. Yakup told Prettyman that he had already started his terminal leave in anticipation of his imminent retirement, and asked: "Could you please tell me, based on my final salary, what

---

[6] "Final compensation" is the average compensation received by the member in the last twelve months of credible service preceding their retirement or death. N.J.S.A. 53:5A-3(i)(1).

my approximate payment will be for my medical benefits based on my final salary that you sent over to pensions?"  The next day, Prettyman replied:

> [Y]ou should not have to pay for your [h]ealth [b]enefits, because you will have [twenty-five years] in the state system.  I keep getting conflicting information. I hope you are free, but because you purchased your time after the signing of Chapter 78, I DON'T know for sure.  You can try and call Retired Health Benefits now that they have your [f]inal [s]alary . . . .

Thus, although Prettyman "hoped" that Yakup would not have to contribute to the cost of his health care coverage in retirement, she forthrightly informed him that she did not know whether this would be the case.  Yakup did not contact the Division or the Commission for a more definite answer about the cost of his health benefits in retirement.

Yakup retired from the State Police on November 1, 2014.  He received a service retirement through the SPRS that was 53.33% of his final compensation.

As noted above, Yakup was not entitled to free medical benefits in retirement because he did not have twenty years of creditable service credit on June 28, 2011.  Unfortunately, however, a contribution for this coverage was not deducted from Yakup's pension payment when he received his first pension payment in December 2014.  Instead, the payment stub incorrectly indicated that his health coverage was "FREE."

A-0637-19

The Division did not discover this error until June 2017 when an audit revealed the mistake. The Division sent a notice to Yakup advising him that beginning July 1, 2017, he would be required to contribute to the cost of his retiree health benefits coverage. However, the Division told Yakup it would not attempt to recoup the charges that should have been imposed for this coverage during the thirty-one months prior to the audit.[7]

Yakup appealed the Division's determination to the Commission. On October 11, 2017, the Commission rendered a decision concluding that Yakup did not qualify for free health care benefits because he did not have twenty years of creditable service on June 28, 2011 as required by N.J.S.A. 52:14-17.28d(b)(3). However, the Commission advised Yakup that he could request an administrative hearing concerning this ruling.

Yakup asked for a hearing and, on January 30, 2018, the Commission transmitted a portion of the case to the Office of Administrative Law (OAL) for a contested case hearing. The Commission found that there was no factual dispute on the issue of whether Yakup met the requirements of N.J.S.A. 52:14-

---

[7] Yakup received a monthly pension payment of $4976.98. Yakup testified that his required monthly contribution toward his health care coverage was "close to six hundred dollars a month . . . ." Thus, Yakup was not required to pay for approximately $18,600 in costs related to his coverage for the period between his retirement and the audit that revealed the billing mistake.

17.28d(b)(3) because he clearly did not have twenty years of creditable service on the effective date of Chapter 78. However, the Commission granted Yakup's request for a hearing to address his claim that the Commission should be equitably estopped from denying him free health coverage based upon the information he received from the Division.

The ALJ thereafter conducted a one-day hearing at which Yakup was the only witness. As noted by the ALJ in his written initial decision, Yakup alleged "that he relied upon the representations of employees of [the New Jersey State Police] and Treasury that he would receive full medical benefits at no expense to him in retirement." Yakup argued that had he received "correct information" concerning his ineligibility for free benefits, he would have continued working and would have received a higher monthly pension payment than he did when he retired. However, Yakup

> acknowledged in [his] testimony that he understood that working the additional years would not have made him any more eligible for "free" medical benefits in retirement than he was when he retired in 2014 . . . , and he believed he would have had to make contributions towards his medical benefits even if he had continued to work the additional years and obtained a special retirement pension.

After considering Yakup's testimony, the ALJ concluded that Yakup failed to prove the elements of equitable estoppel. Although Yakup claimed he

9

spoke to a number of different employees, he only specifically identified Walsh as a Division employee who responded to his inquiries.

Based upon the email Yakup submitted documenting their conversation, the ALJ found that Walsh did not provide incorrect information to Yakup concerning his retiree health coverage. Instead, Walsh's email "clearly, and correctly, inform[ed] [Yakup] that the purchase of his additional service credits [would] not entitle him to a special retirement pension, but rather [would] be applied to add additional service credits towards a service retirement pension and give him a retirement allowance of [55.33%] of his final compensation." The ALJ also found that Walsh properly told Yakup that "he could use his prior service 'purchase to get to [his] [twenty-five] years for Health Benefits,' and that information was, on its face, accurate" because Yakup needed twenty-five years of service to obtain subsidized health coverage. Moreover, Walsh never advised Yakup that his retiree health benefits would be free. Thus, the ALJ found that the Division did not provide Yakup with any inaccurate or misleading advice.

Prettyman was employed by the State Police rather than the Division. Prettyman acknowledged in her email to Yakup that she was not sure whether he was entitled to free retiree health coverage and urged him to contact other individuals who might be able to provide him with further information. The

10

ALJ found that "[d]espite the opaque nature of the information [Yakup] received regarding his retiree health[]care benefits, [Yakup] proceeded with his retirement from [the State Police] effective November 2014." Thus, the ALJ concluded that none of the information provided by Walsh or Prettyman constituted a "'guarantee' of free health[]care benefits in retirement that [Yakup] could reasonably and justifiably rely upon in making his decision of when or if to retire and cannot be the basis for [Yakup's] equitable estoppel claims."

The ALJ also found that Yakup failed to prove that any of the statements made by Walsh and Prettyman, or the indication on his payment stubs that the health benefits were "free," "were made with the intention or expectation that he rely upon them, or that he reasonably and justifiably relied upon them when he retired in November 2014." Instead, the record showed that Yakup "was aware of the various governing statutes, and it [was] documented that he actively engaged in his own research of the governing material in making his retirement decisions."

Under these circumstances, the ALJ found that the Commission appropriately corrected the billing mistake that was made when Yakup retired, allowed him to keep the windfall he received from not being charged for coverage for thirty-one months, and ensured that Yakup paid the proper

contributions going forward. Therefore, the ALJ rejected Yakup's equitable estoppel contention.

After considering the exceptions Yakup filed to the ALJ's initial decision, the Commission adopted the ALJ's recommendations and denied Yakup's claim for free health benefits during retirement.

III.

Yakup now appeals from the Commission's September 3, 2019 determination and presents the same arguments he unsuccessfully raised in the administrative proceeding. Thus, Yakup again contends that he was entitled to free health coverage because he allegedly had twenty years of creditable service on June 28, 2011. Yakup also repeats his assertion that the Commission erred by denying his equitable estoppel claim.

For the reasons that follow, we are satisfied that both of these contentions lack merit. We affirm substantially for the reasons set forth in the ALJ's thorough initial decision that was adopted by the Commission, and add the following comments.

Our review of an agency's decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [ ] not

supported by substantial credible evidence in the record as a whole.'" Ibid. (second alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). In determining whether agency action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

> (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
>
> [W.T. v. Div. Med. Assistance & Health Servs., 391 N.J. Super. 25, 35-36 (App. Div. 2007) (quoting Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)).]

Thus, the burden of showing the agency acted in an arbitrary, capricious, or unreasonable manner rests on the party opposing the administrative action. E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (citing In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). It is not the function of the reviewing court to substitute its independent judgment on the facts for that of an administrative agency. In re Grossman, 127 N.J. Super. 13, 23 (App. Div. 1974).

A-0637-19

We must also "'defer to an agency's technical expertise, its superior knowledge of its subject matter area, and its fact-finding role,'" and therefore are "obliged to accept all factual findings that are supported by sufficient credible evidence." Futterman v. Bd. of Review, Dept. of Labor, 421 N.J. Super. 281, 287 (App. Div. 2011) (quoting Messick v. Bd. of Review, 420 N.J. Super. 321, 325 (App. Div. 2011)). Although we are not bound by an agency's interpretation of law, we accord a degree of deference when the agency interprets a statute or a regulation that falls "within its implementing and enforcing responsibility. . . ." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (citation omitted). Our authority to intervene is limited to "those rare circumstances in which an agency action is clearly inconsistent with [the agency's] statutory mission or with other State policy." Futterman, 421 N.J. Super. at 287 (alteration in original) (internal quotation marks omitted).

Furthermore, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S., 412 N.J. Super. at 355 (second alteration in original) (quoting Wnuck, 337 N.J. Super. at 56). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div.

of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to [our] de novo review." Ibid. (citation omitted).

Applying these principles, we discern no basis for disturbing the Commission's determination that Yakup lacked the twenty years of creditable service required to obtain free health coverage. As stated above, Chapter 78 became effective on June 28, 2011. On that date, Yakup had eighteen years and five months of service credit he had accrued in the SPRS from January 1993 to June 2011. Thus, on June 28, 2011, Yakup did not "have [the twenty] or more years of creditable service in one or more State or locally-administered retirement systems" needed to obtain free health care benefits in retirement. N.J.S.A. 52:14-17.28d(b)(3).

Yakup contends he had had ten months of prior service in the PERS from June 1989 through March 1990 when he worked for the county prosecutor's office, and thirty additional months of prior service in the PFRS from his former employment in the Borough for the period between April 1990 and September 1992. He argues that if this service was added to his eighteen years and five

months of SPRS credit, he would have had more than the twenty years required by the statute for free benefits.

However, Yakup's prior service credit with the PERS and the PFRS expired well before the June 28, 2011 deadline. He did not transfer his PFRS credit to his SPRS account prior to that date, and he did not complete his purchase of the PERS and PFRS credit until March 2014. Thus, under the plain language of N.J.S.A. 52:14-28d(b)(3), Yakup did not "have" this forty months of service credit on June 28, 2011. Therefore, he did not qualify for free health benefits in retirement.

Yakup's equitable estoppel argument also remains unavailing. "Equitable estoppel is 'rarely invoked against a governmental entity[,]'" Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000) (quoting Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999)), particularly when estoppel would interfere with "essential governmental functions." Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954). The doctrine of equitable estoppel requires proof of

> a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a

16

manner as to change his [or her] position for the worse
. . . .

[Carlsen v. Masters, Mates & Pilots Pension Plan Tr.,
80 N.J. 334, 339 (1979).]

The reliance must be "reasonable and justifiable" and the burden of proof is on the party asserting the estoppel. Foley Mach. Co. v. Amland Contractors, Inc., 209 N.J. Super. 70, 75 (App. Div. 1986).

Yakup cannot meet these requirements. As the ALJ found, Walsh and Prettyman provided Yakup with accurate information about his pension and health care benefits. There was no evidence that either employee intentionally misled Yakup in an attempt to induce him to detrimentally rely on any advice they gave him. Neither employee promised or "guaranteed" that he would receive free health coverage after he retired.

Finally, the billing error that permitted Yakup to receive $18,600 in health care benefits at no cost to him was merely a mistake that the Commission properly and promptly corrected when it was revealed by the audit. See Skulski v. Nolan, 68 N.J. 179, 195 (1975) (stating that administrative agencies have "inherent authority to reopen and modify previous orders," limited only by the exercise of "reasonable diligence"). Therefore, the Commission was not

equitably estopped from ensuring that Yakup paid his required monthly contribution going forward.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION