**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3065-21

TRACI WILLIS,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and HOUSING AUTHORITY
OF THE CITY OF CAMDEN,

     Respondents.

_____

Submitted September 26, 2023 – Decided November 19, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Board of Review, Department of Labor, Docket No. 179492.

Goldberg, Miller & Rubin, PC, attorneys for appellant (Robert P. Stein, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review (Sookie Bae-Park, Assistant Attorney General, of counsel; Kevin K.O. Sangster, Deputy Attorney General, on the brief).

Brown & Connery, LLP, attorneys for respondent Housing Authority of the City of Camden (Michael J. DiPiero, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Appellant Traci Willis appeals from an April 8, 2022 final agency decision of the Board of Review (Board) disqualifying her from receiving unemployment compensation benefits for gross misconduct connected with her work pursuant to N.J.S.A. 43:21-5(b). We affirm.

I.

Appellant was employed by respondent Housing Authority of the City of Camden (HACC) in various positions beginning on April 3, 2000. On September 21, 2009, she was appointed Director of HACC's Housing Choice Voucher (HCV) program, commonly known as Section 8. On October 18, 2017, appellant married Mark Willis, a landlord who participated in the HCV program.[1]

On December 21, 2018, HACC placed appellant on paid administrative leave while it conducted an internal investigation into alleged conflicts of

---

[1] Because appellant and Mark Willis share a surname, we refer to Mark Willis by his full name to avoid confusion.

interest. The investigation was prompted by HACC's receipt of a letter from Mark Willis's former spouse. She reported that while appellant was the Director of the HCV program, she was also a principal of MTW Investment Group, LLC (MTW), which received rent subsidy payments from HACC through the HCV program. The tipster also reported that after Mark Willis married appellant he continued to receive rent subsidy payments from HACC through the HCV program for various properties.

The investigation revealed that appellant created MTW in May 2015. MTW began receiving rent subsidy payments from HACC through the HCV program in July 2015. Those payments continued until appellant's suspension. While appellant claimed to have transferred her interest in MTW to a third party on December 16, 2016, state records listed appellant as having an interest in MTW as late as March 2019. HACC also produced evidence that appellant was listed as the party to receive local property tax bills for a parcel owned by MTW in 2019.

On March 27, 2019, at the conclusion of the investigation, HACC terminated appellant. HACC determined appellant engaged in intentional wrongdoing. Addressing appellant, HACC found that

> by making MTW a landlord under the HCV [p]rogram
> . . . which you directed, you created a substantial

3

conflict with the proper discharge of your duties by eradicating all notions of impartiality when granting MTW subsidies over other landlords who were in direct competition for the same subsidies [in violation of the HACC human resources policy manual (Manual)]. Such activities also rise to the definition of [f]raud under [the Manual].

[(citations omitted).]

HACC concluded that the "blatant conflict of interest . . . could only have been waived by" the Department of Housing and Urban Development (HUD) prior to its occurrence. See 24 C.F.R. § 982.161.

With respect to her marriage to Mark Willis, the HACC found

as the Director of the HACC HCV [p]rogram, your marriage to a landlord receiving subsidies under HACC's HCV [p]rogram is in violation of [the Local Government Ethics Law,] N.J.S.A. 40A:9-22.5[,] as no member of your immediate family shall have an interest in a business organization or engage in any business transaction which is in substantial conflict with the proper discharge of your duties.

HACC rejected appellant's claim that Mark Willis transferred the properties receiving the HCV subsidies to his former spouse in March 2016 as part of a divorce settlement. HACC noted that a November 13, 2018 court order states that Mark Willis must make monthly payments to his former spouse until he transfers the properties to her, establishing that he owned the properties until at least that time.

4

On March 31, 2019, appellant filed a claim for unemployment benefits. A Deputy Director later determined appellant was disqualified from receiving benefits based on her termination for gross misconduct.

Appellant filed an appeal in the Appeal Tribunal, which held a hearing on August 22, 2019. At the hearing, appellant claimed that in April 2015, she discussed the formation of MTW with Maria Marquez, who was then the HACC Executive Director. She also claimed she attended a meeting on October 29, 2015, with Marquez and HACC's acting general counsel Kenneth Mann, who determined appellant could address the conflict of interest created by her ownership of MTW by recusing herself from matters involving MTW. She testified that she followed Mann's direction and had her subordinates handle all subsidy payments to MTW. Appellant produced no documentary evidence that the meeting took place or memorializing Mann's purported resolution of the conflict of interest.

Appellant also testified she disclosed her relationship with Mark Willis, who she was then dating, to Marquez in 2014. She testified Marquez told her to address the conflict by having all matters concerning Mark Willis handled by staff members who reported directly to Marquez. In addition, appellant testified she disclosed her marriage to Mark Willis at the time it happened to Victor

A-3065-21

Figueroa, who was then HACC Executive Director. According to appellant, Figueroa did not instruct her to take any steps beyond continuing her existing recusal from all matters relating to Mark Willis.

Figueroa agreed he became aware of appellant's marriage to Mark Willis at the time the marriage took place. He stated he was aware Mark Willis owned properties receiving subsidies from HACC through the HCV program and informed appellant the marriage created a conflict of interest. According to Figueroa, he instructed appellant to provide him with a recommendation on how to address the conflict, but she did not comply with that directive. Figueroa did not follow up with appellant until HACC received the letter from Mark Willis's former spouse.

On August 28, 2019, the Appeal Tribunal reversed the decision of the Deputy Director. The Tribunal found:

> While the employer was within its rights in discharging [appellant], this right does not necessarily establish . . . that the discharge was due to misconduct connected with the work within the meaning of the law.
>
> [Appellant] has shown the employer was fully aware of her company interest and company recusal years before the employer received a complaint from [appellant's] husband['s] ex-wife. If [appellant] was in a conflict of interest she should have been terminated in 04/2015 when the company was formed or 10/2015 when [appellant] again informed the former executive

director and general counsel of her company interest. The employer has not met the burden of proof her actions were dishonest or intentional. Therefore, no disqualification arises under N.J.S.A. 43:21-5(b), as [appellant] was not discharged for misconduct connected with the work.

HACC appealed to the Board, which remanded the matter to the Appeal Tribunal. The Board determined: (1) more information was needed with respect to appellant's ownership interest in MTW, the entity's business, and appellant's purported transfer of her interest in MTW in 2016; (2) the Appeal Tribunal failed to make findings of fact with respect to whether appellant divested herself of her interest in MTW and whether and when Mark Willis transferred his properties to his former spouse; and (3) it was necessary for HACC to produce the letter from Mark Willis's former spouse that sparked the investigation.

On remand, the Appeal Tribunal held a hearing on May 5, 2020. Figueroa testified that appellant was given an opportunity to produce documentary proof she was advised by HACC that the conflicts of interest posed by her ownership of MTW and marriage to Mark Willis could be resolved through her recusal from matters concerning MTW and Mark Willis. Appellant failed to produce any such evidence. Figueroa also testified the investigation revealed HCV payments from HACC to MTW were being sent monthly by check to appellant's home address. He also testified that any delegation of authority by appellant to

7

subordinates would not address the conflicts of interest because waiver of conflicts must be made in writing by HUD. Figueroa stated the evidence uncovered during the investigation was referred to the United States Attorney's Office and the Inspector General of HUD for further investigation.

On May 14, 2020, the Appeal Tribunal again reversed the Deputy Director, applying the same reasoning expressed in its August 28, 2019 decision. On September 4, 2020, the Board affirmed the Appeal Tribunal's decision.

HACC appealed the Board's September 4, 2020 decision to this court. The Board thereafter moved for a remand "to further consider the testimony and evidence presented to the [Appeal] Tribunal, as well as issues not addressed by the Tribunal after the" Board's remand. We granted the Board's motion.

On April 8, 2022, the Board on remand issued a decision reversing the Appeal Tribunal. The Board noted appellant produced no evidence establishing she disclosed her interest in MTW to HACC. In addition, the Board found appellant retained her interest in MTW, which the Board concluded was formed for the purpose of receiving Section 8 payments, until at least 2019. The Board also found that Mark Willis continued to receive payments from HACC through the HCV program after he married appellant and did not divest himself of the

properties for which those payments were made at least through the date appellant was placed on administrative leave.

Based on those findings, the Board concluded appellant's conduct amounted to an act punishable as a crime of the fourth degree under N.J.S.A. 2C:27-9, unlawful official business transaction, as well as gross misconduct, warranting her disqualification for unemployment benefits.

This appeal followed. Appellant argues the Board exceeded its authority by rejecting the Appeal Tribunal's credibility determinations and erred in its conclusion she committed a criminal act or gross misconduct disqualifying her from unemployment benefits.

After the parties submitted their briefs, the Attorney General informed this court that on September 18, 2023, appellant pled guilty to third-degree conspiracy to tamper with public records for the purpose to defraud, N.J.S.A. 2C:5-2(a); N.J.S.A. 2C:28-7(a). The conviction arose from the conduct that resulted in appellant's termination by HACC. In addition to imposing a suspended jail sentence and a three-year term of probation, the court forfeited appellant's employment at HACC and permanently disqualified her from holding any office or position with the State or any of its administrative or political subdivisions.

Our review of an administrative agency decision is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). "'[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs.'" Ibid. (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). "If the Board's factual findings are supported 'by sufficient credible evidence, [we] are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982)). We also give due regard to the agency's credibility findings. Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997). "Unless . . . the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, 152 N.J. at 210.

"The underlying purpose of the Unemployment Compensation Law 'is to provide some income for the worker earning nothing because he is out of work through no fault or act of his own.'" Futterman v. Bd. of Review, 421 N.J. Super. 281, 288 (App. Div. 2011) (emphasis omitted) (quoting Brady, 152 N.J. at 212) (internal quotation marks omitted). Thus, a person is disqualified for benefits

10                                                                    A-3065-21

"[f]or the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the five weeks which immediately follow that week, as determined in each case."  N.J.S.A. 43:21-5(b).

> "Misconduct" means conduct which is improper, intentional, connected with the individual's work, within the individual's control, not a good faith error of judgment or discretion, and is either a deliberate refusal, without good cause, to comply with the employer's lawful and reasonable rules made known to the employee or a deliberate disregard of standards of behavior the employer has a reasonable right to expect . . . .
>
> [Ibid.]

Additionally,

> [i]f the discharge was for gross misconduct connected with the work because of the commission of an act punishable as a crime of the first, second, third or fourth degree under [Title 2C], the individual shall be disqualified . . . and no benefit rights shall accrue to any individual based upon wages from that employer for services rendered prior to the day upon which the individual was discharged.
>
> . . . .
>
> To sustain disqualification from benefits because of misconduct under this subsection (b), the burden of proof is upon the employer, who shall, prior to a determination by the department of misconduct, provide written documentation demonstrating that the employee's actions constitute misconduct or gross misconduct.

11

[Ibid.]

We have carefully reviewed the record and find no basis on which to reverse the Board's decision. The record contains sufficient credible evidence supporting the determination that appellant is disqualified from receiving unemployment benefits. It is undisputed that appellant and her spouse were the recipients of public funds, the distribution of which were under appellant's direct or indirect control by virtue of her public employment. Appellant does not dispute that her ownership of MTW and marriage to Mark Willis created conflicts of interest with her duties as Director of the HCV program. She claims, however, that she disclosed those conflicts and was told by her supervisors at HACC that she could address the conflicts by having her subordinates handle all matters concerning MTW and Mark Willis. As the Board found, apart from her self-serving testimony, appellant produced no evidence that she made the disclosures or received advice addressing the conflicts of interest from her supervisors at HACC. We share the Board's incredulity that the disclosure and resolution of conflicts of interest of such magnitude would not have been memorialized in writing.

The improper nature of appellant's self-dealing with public funds is self-evident. 24 C.F.R. § 982.161(a)(2) provides no entity that administers an HCV

12

program, such as HACC, may enter into a contract relating to HCV funds with an employee who has a direct or indirect interest in the contract if that employee formulates policy or influences decisions with respect to the program. In addition, where a conflict arises as the result of such a contract, the employee must disclose the conflict to HUD, which has the sole authority to waive the conflict in writing. 24 C.F.R. § 982.161(b) and (c). Even if one were to believe appellant's testimony, she concedes she did not raise her conflicts of interest with HUD and that HUD did not waive those conflicts in writing.

In addition, the Manual states the misuse of federal funds is grounds for disciplinary action, up to and including termination. It also prohibits employees from having any direct or indirect interest in substantial conflict with the proper discharge of their duties in the public interest, and from acting in any matter where a personal interest can reasonably be expected to impair their objectivity and independence of judgment. Similar prohibitions are included in the Local Government Ethics Law, N.J.S.A. 40A:9-22.5; 40A:9-22.2(c)-(d). There is ample support in the record for the Board's determination that appellant's personal interest in her and her husband's receipt of public funds, the distribution of which was discretionary and competitive, was in conflict with her obligations as Director of the HCV program and constituted gross misconduct.

We are not persuaded by appellant's argument the Board lacked the authority to reject the credibility determinations of the Appeal Tribunal. To the contrary, N.J.A.C. 1:1-18.6 authorizes the Board to reject or modify credibility findings upon a determination, based on a review of the record, that those findings are arbitrary, capricious, or unreasonable. This is precisely the basis on which the Board determined appellant's testimony lacked credibility.

As the Board explained, appellant's credibility was called into question when: (1) her claim to have transferred her interest in MTW was contradicted by evidence of her continued interest in that entity until at least 2019; (2) her testimony that Mark Willis transferred his properties to his former spouse was contradicted by a court order that indicated he continued to own the properties after his marriage to appellant; and (3) she failed to produce any documentary evidence supporting her claimed disclosures and the advice she purportedly received from HACC officials. In addition, appellant's conviction for tampering with public records for the purpose to defraud, although arising after the Board's decision, is based on the conduct that resulted in her termination and corroborates the Board's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-3065-21